CAMDEN, ATLANTIC AND VENTNOR LAND COMPANY

*v.*

JOEL MASON and MARGARET W. BAKER.

[Submitted October 20th, 1919. Determined October 31st, 1919.]

Where a mortgagor to secure advances for the erection of buildings, and also the mortgagee, were culpably negligent in erecting the buildings on a lot owned by the mortgagor's step-daughter, the mortgagee cannot maintain a bill to enforce an equitable lien against the step-daughter's lot for the amount it was enhanced in value by reason of money supplied by him for construction of the buildings.

---

On final hearing on bill to establish an equitable lien.

*Mr. John S. Westcott (Mr. Ulysses G. Styron),* for the complainant.

*Messrs. Thompson & Smathers,* for the defendant Joel Mason.

*Mr. William M. Clevenger,* for the defendant Margaret W. Baker.

LEAMING, V. C.

Defendant Mason owned certain unimproved building lots in Ventnor, and, desiring to erect residence buildings on them, to the end that the lots, so improved, could be more readily sold, executed a mortgage on the lots to complainant to secure advances of money which complainant agreed to make to Mason from time to time as the buildings reached certain successive stages of completion. By mistake one of the buildings was erected on a lot which was not included in the mortgage and which was in fact owned by defendant Baker. Complainant's bill seeks to establish and enforce an equitable lien against that lot for the amount that the lot has been enhanced in value by reason of the money supplied by complainant for the construction of that building.

The evidence discloses that the building was erected on the lot owned by defendant Baker without her knowledge or consent and at a time when she was absent and had no knowledge or means of knowledge that the building was being erected.

The power of this court to enforce a lien or charge of the nature here sought under the circumstances stated, at the instance of the person making the improvements or supplying the money therefor, may well be doubted.

I think that no authority can be found prior to the case of *Bright* v. *Boyd, 1 Story 478,* in which a court of equity assumed the right to enforce a lien of this nature except in two specific classes of cases. The first class comprised cases in which the owner of the lot had stood by and suffered the improvements to be made, or had in some other way, directly or indirectly, contributed to the occurrence of the mistake; the operation of the ordinary principles of equitable estoppel afforded grounds for

imposing liability in that class of cases. See *Sumner* v. *Seaton, 47 N. J. Eq. 103.* The other class of cases comprised instances where the owner of the lot was the actor seeking equitable relief touching his lot from one who had innocently made improvements upon it; in that class of cases liability could be imposed by the operation of the equitable maxim requiring equity from one who seeks equity. *Bright* v. *Boyd, supra,* was decided by Mr. Justice Story in 1841. Seven years prior to that decision the learned justice had, in his work on *Equity Jurisprudence,* recognized the specific limitations of power already stated. *2 Story Eq. Jur.* § *1238.* Though in *Bright* v. *Boyd,* as reported in *1 Story 478,* it was doubted by the learned justice whether relief could be awarded except in the circumstances above referred to, in the final decision of the case two years later those doubts were resolved against the limitations theretofore defined. *Bright* v. *Boyd, 2 Story 607.* In *Bright* v. *Boyd* the relief sought appealed with great strength to a sense of common justice. The real estate of a testator had been sold by an administrator with the will annexed to pay debts of the testator and had been purchased at its full value, and the purchaser had made extensive improvements in good faith; it was afterwards ascertained that the sale was void because of neglect of the administrator to comply with certain statutory requirements; the devisee, who had in no way "stood by" or consented to or encouraged the improvements or contributed to the mistake, sued in ejectment and recovered a judgment for possession; the purchaser then filed his bill in equity to compel the devisee to pay for the value of the improvements before being permitted to take possession under his judgment in ejectment. The decree awarded that relief. The relief there awarded was declared to be in conformity to doctrines of the civil law, but was admittedly granted without common law precedent. Militating against the exercise of such power by the court is the obvious circumstance that its exercise necessarily includes the power to impose upon an innocent owner who had no knowledge that improvements were being made the burden of paying for improvements which were in no sense of a public nature and which may have been wholly contrary to the uses to which he desired to devote the

property. I do not find that courts of equity have since been inclined to extend their powers beyond the limitations already referred to. Professor Pomeroy, in his work on *Equity Jurisprudence*, written forty years after *Bright* v. *Boyd*, declares the limitations to the power to afford relief to be those herein first stated. *3 Pom. Eq. Jur.* § *1241 and note.* See also *2 Story Eq. Jur.* (*13th ed.*) § *799b; Ibid.* § *1237 and note.* The power to revive the lien of encumbrances or debts which have been discharged through mistake rests upon essentially different principles and can in no way occasion hardship upon the property owner.

In *McKelway* v. *Armour, 10 N. J. Eq. 115,* a lien was enforced at the instance of the person innocently making improvements on the land of another in the absence of fraud upon the part of the lot owner; but in that case the lot owner saw the improvements progressing from day to day, and while he did not realize that they were being made on his lot had at least equal opportunity with the complainant to know the boundary lines of the lots; and in the reported opinion in that case the learned chancellor says: "The fact of Armour's [the lot owner] standing by and participating in the mistake is an important feature in the case."

But I think it unnecessary to determine herein how far the principles of *Bright* v. *Boyd, supra,* may be applied in this jurisdiction.

Defendant Mason, who erected the building, and complainant, who supplied some of the money to Mason for that purpose, were both negligent in an extreme degree, and the sole cause of the present unfortunate situation is to be found in their mutual culpable negligence. Complainant's mortgage was on specific lots owned by Mason; advances were to be made by complainant as the buildings on those lots reached successive stages of completion, and it was complainant's duty under its agreement to observe the progress of construction; the public records fully apprised complainant of the location of those lots and reasonable care would have disclosed that the building here the subject of controversy was not on any of the mortgaged lots. Such negli-

gence should, I think, impel this court to deny the extraordinary relief here sought against the consequences of complainant's negligence. See *Dillett* v. *Kemble, 25 N. J. Eq. 66;* *Cook* v. *Bodine, 30 N. J. Eq. 470.*

Complainant urges that the fact that defendant Baker had at a prior time arranged with defendant Mason, her step-father, for the latter to erect for her a building on her lot, to the end that it could be more readily sold, should be considered as a circumstance contributing to complainant's right to relief. I am unable to adopt that view. The building was erected on the Baker lot in the belief that it was a lot owned by Mason, and the tentative arrangement that existed between Miss Baker and Mr. Mason, touching a building on her lot, had no relation to or influence upon the occurrences here involved.

I will advise a decree dismissing the bill.