EDWARD J. MORIN *vs.* MARIA A. RANDALL.

MAY 26, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. By this bill in equity the complainant seeks to compel the respondent to convey to him certain real estate standing in her name and located in Harmony Village in this state. There is also a prayer for such other and further relief as the court may see fit to grant. The cause was heard by a justice of the superior court on bill, answer and proof, and at the conclusion of the testimony, a decree was entered denying the relief prayed for and dismissing the bill. The complainant duly appealed to this court from that decree.

The complainant and the respondent were the only witnesses to testify. It appears in evidence that the complainant and his wife, who was the only daughter of the respondent, lived in a small cottage on the respondent's farm in the village of Harmony. In 1922 the respondent's husband died. The complainant testified that shortly after

his death, the respondent, who was then advanced in years and alone, asked the complainant and his wife to come and live with her in the large farm house, promising them that if they did so and took care of her and the farm for the rest of her life, "the property belonged to my wife and I after she's gone." The complainant further testified that, relying upon this promise, he and his wife went to live with the respondent; that they carried out their agreement for some fifteen years, during which time he paid the respondent's taxes on different occasions and further expended various sums of money to operate the farm and to make improvements and repairs to the buildings thereon, amounting in all to $2780.55; and that in this period the respondent repeatedly told him that he and her daughter "owned the place." He also testified that the money which he used for the benefit of the respondent came from his savings, from the rental of his own farm, and from doing odd jobs, such as wood chopping, ploughing and the like, for divers persons from time to time.

The respondent positively denied that she ever entered into any agreement with the complainant, her testimony being to the effect that all her dealings were with her daughter. the complainant's wife, and that the complainant was not involved in any way in these dealings. Her testimony tends to deny the payments alleged to have been made by the complainant for the upkeep of the farm, the maintenance of the buildings, and the payment of taxes. There was no finding by the trial justice as to just what these payments amounted to. The record is incomplete on the issue of expenditures by the complainant and credits to the respondent, as the trial justice apparently was of the opinion that such issue was not before him on the bill as framed. For instance, there is no testimony as to what the household and living expenses were, what was the arrangement between the parties as to their payment and who actually paid them, what profit, if any, came from the

farm and who received it, and whether the complainant was entitled to retain for himself the sum of $10 a week that he received from a woman and her daughter who boarded with these parties for an undefined period of time. These and other similar matters must be determined before a final accounting can be had, which will be just to both the complainant and the respondent.

The evidence before us also shows that on or about February 13, 1929, the respondent executed a deed of her real estate to herself and daughter as joint tenants. The plaintiff testified that he had heard of this deed and understood that "his name was on the deed"; that after the death of his wife on July 5, 1935, he learned for the first time that he was not named in the deed; that this led to a disagreement with the respondent, and that she then stated that there was nothing for him, whereupon he left the farm, consulted an attorney and brought this bill.

In this state of the evidence, the trial justice found that the complainant had failed to establish by the required degree of proof the agreement claimed by him and, therefore, denied his prayer for specific performance. The testimony on this point is conflicting. We have uniformly held that the findings of the trial justice on conflicting evidence are entitled to great weight and will not be disturbed by us unless clearly erroneous. We find nothing in the record before us that warrants our interfering with his decision on this point.

The remaining question is whether under this bill the complainant is entitled to relief for whatever balance, if any, may be ultimately found in his favor for payments and expenditures, in reference to the respondent's real estate described in the bill, by way of taxes, improvements, repairs and upkeep, which he made under the mistaken belief that he had a proprietary interest in that property. The transcript of the testimony tends to show that the complainant did expend his own money at different times

and for different purposes in the maintenance of respondent's property. He places this amount at $2780.55, and it is supported to some extent by the written evidence in the case. The respondent denies this claim in general terms. Whether the complainant should receive this entire sum, or any part thereof, we are unable to determine, because, as we have already stated, we cannot tell from the transcript before us what credits or defenses, if any, the respondent is entitled to set off and maintain against this claim.

In his decision dismissing the bill, the trial justice clearly intimates that the complainant should be reimbursed in some amount or manner by the respondent. However, he refrained from making a money award to the complainant in the mistaken belief that, under the bill as framed, he did not have the power to grant such relief. In this he was in error.

The evidence tends to show that there was an honest misunderstanding between the complainant and the respondent concerning the latter's property, as a result of which the former claims to have expended certain sums of his own money in the maintenance of the property. The complainant's bill contains a prayer for general relief. Ordinarily, under such prayer a complainant should not be denied all relief merely because he has failed to sustain his prayer for specific relief, if, consistent with the general allegations of the bill, the proof sufficiently shows that he has established certain rights within the scope of his bill which equity should protect. See *Bagley* v. *Page,* 57 R. I. 186, 193. Courts of equity have intervened to prevent injustice under circumstances similar to those in the instant case. See *Bright* v. *Boyd,* 1 Story 478. Fed. Case No. 1875; 2 Story 605, Fed. Case No. 1876; *Ridley* v. *McNairy,* 2 Humphrey (Tenn.) 174; *Chamberlain* v. *Preston,* 182 A. (Md.) 579; *Schleicher* v. *Schleicher,* 182 A. (Conn.) 162.

510

Due to the incompleteness of the record, which makes it impossible for us to determine what amount, if any, may be justly due to the complainant from the respondent, we are obliged to remand the cause to the superior court for the determination of that issue. If such issue is determined in favor of the complainant, the decree following such determination shall impose a lien in the amount fixed by the court upon the respondent's property involved in this cause, with the condition, however, that such lien shall not be enforced until after the respondent's death.

The complainant's appeal is sustained and the decree appealed from is reversed in part.

On June 6, 1938, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Henry E. Crowe, Thomas Hetherington,* for complainant.

*Frank F. Davis, Emile H. Ruch,* for respondent.