### SOMMERS v GRAY

Ohio Appeals, 3rd Dist, Hancock Co.

No. 406.   Decided Dec. 18, 1939.

Betts & Betts, Findlay, for plaintiff-appellee.

Frank M. Young, Fostoria; John Gutknecht, for defendant-appellant.

## OPINION

BY THE COURT:

This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Hancock County, Ohio. By agreement of the parties it is submitted to this court upon a transcript of the evidence taken on the trial of the case in the Common Pleas Court.

The action is one to quiet title to a certain tract of real estate in the petition described, situated in the City of Fostoria, Hancock County, Ohio, brought by Harry J. Sommers as plaintiff against George M. Gray as defendant.

In his answer to the amended petition the defendant generally denies the allegations contained in plaintiff's amended petition, and avers that plaintiff has no interest whatever in the premises described in the petition, and alleges that the defendant acquired title thereto by virtue of a warranty deed executed by one Henry J. Adams to the defendant on June 21, 1926, and thereafter recorded in Volume 174, page 215 of the deed records of Hancock County, Ohio.

The defendant further avers that the premises described were involved in Cause No. 22048, A. O. Hamilton as Treasurer of Hancock County, Ohio v Harry Sommers et, and that summons was duly served on Harry Sommers in said cause and a sale was ordered and the premises duly advertised for sale on September 6, 1928, by virtue of a judgment obtained by said Treasurer in said action against said Harry J. Sommers for delinquent taxes; and that on January 11, 1929, the treasurer's receipt for redemption of land certified delinquent was issued by said Treasurer to H. J. Adams for defendant for the premises described in the petition, and that a further receipt was issued by said Treasurer to the defendant for advertising fee on delinquent land, in the sum of sixty cents on the same day.

Defendant further avers that at the time said tax suit was pending plaintiff herein asserted no claim to said premises; and that defendant has paid all taxes and assessments levied against said premises since the 21st day of January, 1926; and that the plaintiff has, although being a resident of Fostoria and residing in the vicinity of the premises in question, permitted the defendant to make improvements on said land without asserting any claim thereto; and that if the plaintiff has any interest in said premises he has fraudulently withheld from disclosing the same to the defendant purposely wait-

ing for the defendant to make improvements.

Defendant further avers that on or about the year 1921 plaintiff organized the Lakeview Park Company, a corporation, the purpose of which was to deal in real estate, plaintiff owning ninety per cent of the stock therein; and that on or about August 12, 1921, one Harry J. Adams, being then the owner of the fee of the premises in the petition described and being also one of the directors in said corporation, conveyed to plaintiff by warranty deed, his wife joining therein, certain premises including the premises in the petition described and the purpose of this conveyance was to appropriate the land for the benefit of the Lakeview Park Company; that no consideration whatever passed between the parties and that at the time of said conveyance it was agreed that if and when the Lakeview Park Company was ready the plaintiff was to convey the said premises to said corporation. That on September 12, 1921, Harry J. Sommers and wife by warranty deed conveyed to the Lakeview Park Company certain premises including a portion of the premises conveyed to him by said Harry J. Sommers and wife as aforesaid but excepting from said conveyance the premises described in the petition. That this conveyance constituted an attempt to carry out the agreement between the said Harry J Sommers and Henry J. Adams but that said Sommers fraudulently excepted in said deed, the premises described in the amended petition herein.

The defendant further averred that relying upon the deed to him for the premises in question in 1926 he has expended considerable sums of money in improving said premises and the surrounding lands which belong to defendant, all of which expenditures have increased the value of the premises described in the petition, and follows this averment with an itemization of the amounts alleged to have been expended by him.

The prayer of the answer is that the title to said premises be found in de-

fendant and all pretended claims of plaintiff be cancelled of record and that in the event it is found that the plaintiff has title, that the defendant recover from plaintiff the sum of $9,045.36 as his damages, and for such other and further relief as may be proper.

From the evidence, we find the facts to be as follows:

Henry J. Adams and wife made conveyance by warranty deed under date of August 12, 1931, to plaintiff, of certain premises including the premises described in the petition herein, as alleged in the answer herein; and that such premises were conveyed by said Adams under an agreement that plaintiff should convey the same to the Lakeview Park Company, a corporation, and pay to Adams as the purchase price thereof the sum of one thousand dollars in cash out of the consideration received by him from the Company for the sale and conveyance by him to the Company of said premises and other premises, which cash consideration was to be paid by the Company out of the first proceeds of the sale of bonds issued by it.

Under date of September 12, 1921, the plaintiff made a proposal in writing to the Lakeview Park Company to sell and convey to the Company for a consideration of twenty-five hundred dollars in cash and twenty-five hundred dollars in the capital stock of the corporation to be paid him by the Company, the premises conveyed to him by Adams and wife, and other premises, which proposal was accepted through a resolution of the directors of the Company.

On September 12, 1921, the plaintiff and his wife, in apparent compliance with said accepted proposal, by warranty deed conveyed to the Lakeview Park Company certain premises including a portion of the premises conveyed by Adams to Sommers as aforesaid but excepted from such conveyance the premises described in the petition.

The stock consideration was thereafter issued by the Company to plaintiff. Whether the cash consideration

was paid does not appear from the evidence, although it does appear the Company sold six or seven hundred dollars worth of its bonds. Neither the plaintiff nor the Company paid any part of the consideration for the sale and conveyance of said premises to Adams. Adams, who was a director of the Company, offered and voted for the adoption of said resolution.

The land conveyed by Sommers to the Company as aforesaid was afterwards sold in foreclosure proceedings brought against the Company, and Henry J. Adams purchased the same at sheriff's sale in said foreclosure proceedings.

Subsequent to the acquirement of said premises at sheriff's sale. Henry J. Adams, his wife joining therein, on June 21, 1926, executed and delivered to the defendant a warranty deed purporting to convey the premises described in the petition, and other premises, to the defendant, and that this deed was thereafter recorded in Volume 174, page 215, of the deed Records of Hancock County, Ohio; and the defendant, upon the execution and delivery of said deed, immediately entered into possession and occupancy thereof believing in good faith that by reason of said recorded deed from Adams and wife to himself he had good title thereto, and having no notice or knowledge that plaintiff had or claimed title thereto, made certain valuable improvements thereto as hereinafter mentioned.

The plaintiff, a short time prior to the commencement of this action, and subsequent to the making of said improvements, placed a "no trespassing" sign on the premises but otherwise failed at any time prior to the commencement of this action, to notify the defendant of, or otherwise bring to his attention, the fact that he claimed any right, title or interest in said premises.

An action was brought to sell the real estate described in the petition, for taxes and an order of sale was entered therein as alleged in the answer, but said order of sale was returned on the order of the plaintiff treasurer and H. J. Adams on behalf of the defendant

paid the delinquent taxes in the amount of $33.41 and redemption certificate was issued to him for the defendant therefor, the county auditor through a mistake at said time having transferred the premises on his records to the name of the defendant.

Including the payment of the delinquent taxes mentioned, the defendant, the county auditor having transferred the premises on the duplicate to his name as above mentioned, has paid all the taxes on said real estate from the time of the conveyance of the same to him on June 21, 1926, amounting to the sum of $133.20.

The plaintiff, in 1926 and prior thereto and up to the time of this trial, has had his legal residence within one hundred yards of the lot in question, and although traveling for an occupation between the years 1926 and 1930 was at his residence located as above mentioned, at various times between the years mentioned and has been at said residence almost continually since 1930; and plaintiff's family has resided at such location during all the period mentioned.

At the time the defendant entered into the possession, use and occupancy of the premises in controversy the same were below the level of the surrounding lands and had been used as a dump for dry garbage and other waste materials, and the defendant, almost immediately thereafter, entered into an agreement with the City of Fostoria whereby he granted the city permission to use said premises as a dump for dry garbage and other waste materials, upon terms that he would furnish a man to take care of and level off the materials dumped thereon and whereby the city gave him sufficient compensation therefor to pay all the expenses of said man doing said work and filling up said premises with such materials and dirt to bring it up to the level of the surrounding premises, excepting the services of one man during the years 1926 and 1927 for the period of twenty days levelling, grading and raking said premises, at a wage of

$3.50 per day, the total wage amounting to $70.

Subsequently, in 1932, the defendant planted some shrubbery and trees on the premises at a cost and of the value as an improvement to said premises, of $50.

Defendant also constructed a sewer on said premises at a cost and of the value as an improvement thereon, of $203.70.

The plaintiff by reason of his residence in close proximity to the premises must be deemed to have had notice that said improvements were being made.

The premises, at the time of the commencement of this action and trial thereof, with the improvements made thereon by defendant for which he was not reimbursed by the city, were of the reasonable value of $1500, and without said improvements were of the reasonable value of $1187.30.

From the above facts it is apparent that by the conveyance from Adams and wife to plaintiff in August 1921, the legal title to the premises in controversy vested in plaintiff.

The tax foreclosure proceedings involving the premises, commenced by the treasurer of Hancock County in 1928, did not serve to divest plaintiff of his legal title, as the order of sale therein was withdrawn on order of the treasurer and no sale had. The tax redemption certificate issued at that time did not deprive plaintiff of his legal title to said premises but at most subjected such title to a lien for taxes paid, as set forth in said certificate.

The agreement entered into between the plaintiff and Adams at the time Adams and wife conveyed the premises in controversy and other premises to the plaintiff in 1921, as construed in the light of the resolution of the directors of the Lake View Park Company, offered and voted for by Adams, contemplated that plaintiff should receive conveyance of the premises from Adams and wife and in turn make a proposal to the Park Company for the sale of said premises and other premises the title to which was then held or thereafter acquired by plaintiff for a consideration not allocated to the various parcels of real estate severally proposed to be sold to the Company, consisting of both cash to be paid and stock of the Company to be issued to plaintiff, and that upon the acceptance of the proposal and payment of the consideration by the Company, plaintiff should pay to Adams one thousand dollars of the cash consideration received by him from the Company from the sale of all said premises.

There was no covenant in the agreement between plaintiff and Adams that plaintiff would not sell said premises for a greater or different consideration than he had agreed to pay Adams therefor, nor that the proceeds of the sale of said premises should be kept separate and apart from the proceeds of the sale of other premises, for the use and benefit of Adams, and the whole agreement constituted in law only an agreement by Adams to sell to the plaintiff on credit the premises conveyed by Adams and wife to plaintiff.

A sale of real estate upon credit does not constitute the purchaser grantee a trustee of the title of the real estate for the vendor and consequently plaintiff never held the title to the premises in controversy as a trustee for Adams, and the subsequent conveyance of the premises by Adams and wife to the defendant by warranty deed did not have the effect of constituting plaintiff a trustee of the title for defendant.

The premises in controversy therefore are not subject to any trust in favor of the defendant and the plaintiff not having parted with the title conveyed him by Adams and wife, has the legal right to the premises and is entitled to the possession thereof as against the defendant.

The question as to whether the Lakeview Park Company, by reason of the failure of the plaintiff to convey in conformity with his written proposal, could enforce a trust on said real es-

tate on its own behalf is not involved in this action.

The plaintiff having legal title and being entitled to the possession of said premises, the question arises as to what rights if any the defendant may have in or to the premises for taxes paid and improvements made by him in good faith as an occupying claimant of the premises.

This action is one in equity to quiet title, so the provisions of ▇▇▇▇▇▇▇ §§11907 to 11921, GC, known as the occupying claimant law, are inapplicable as the benefits of the law are limited by its terms to actions for the recovery of real property, that is, actions in ejectment which are purely actions at law. Such provisions are inapplicable for the further reason that in the instant case the occupying claimant has no claim to the title except by virtue of the recorded deed from Adams and his wife to himself, Adams at the time not holding title to the premises by deed duly authenticated and recorded. **Beardsley v Chapman, 1 Oh St 118.** And the defendant does not come within any of the other classes upon whom the statutes confer the benefits of such occupying claimant act.

We will therefore consider what rights if any defendant ▇▇▇▇▇▇▇ may have in the premises in equity.

In the case of **Preston v Brown, 35 Oh St 18,** it was flatly held by the Supreme Court that although an occupying claimant to land is not entitled to the benefits of the occupying claimant act he may nevertheless be awarded compensation in equity for lasting and valuable improvements made upon the premises.

In discussing this case, the following language is used in the opinion at page 28, to-wit:

"It is a familiar rule, which a court of equity always enforces, that if an owner of an estate stands by and suffers another, acting in good faith and without notice of his title, to place improvements thereon, which add per-manent value to the estate, such improvements will constitute a lien thereon. 2 Story's Eq. Jur. §1237."

"The doctrine proceeds upon the principle, that one person will not be permitted, in equity, to enrich himself by the loss or at the expense of another, when the loss would have been avoided had the former acted honestly and in good faith. His silence, in such case, is tantamount to a fraudulent concealment of his title, and to the extent that the party in possession has been thereby misled into the making of improvements that he otherwise would not have made, a court of equity grants relief by charging the value of the improvements as a lien upon the estate to which they have been added. Bright v Boyd, 1 Story 478; Id. 2 Story 605; Shine v Gough, 1 B. & Peatt. 444; Cawdor v Lewis, 1 Young & C. 427."

The holding of the Supreme Court and the authorities cited in the opinion thereof are in accord with the great weight of authority. 31 C. J. 314. 14 R. C. L. 18.

Applying the holding and rules mentioned, to the facts of the instant case the defendant is entitled in equity to a lien on the premises in controversy for the difference between the value of the premises as improved by unreimbursed expenditures made by him, namely $1500, and the value of the premises without such improvements, namely $1164.30, amounting to the sum of $335.70; and upon the same equitable principles the defendant is entitled in equity to a lien on said premises for the taxes paid by him thereon amounting to the sum of $133.20. But considering and treating the rights of an occupying claimant in equity analogous to those of an occupying claimant under the statute, the plaintiff has the option of tendering the conveyance of the premises in controversy to the defendant for the consideration representing the present improved value of the premises, to-wit, $1500, less the aggregate amount of said liens for improvements and taxes amounting to

$456.90, that is, a net consideration of $1043.10; and if the defendant refuses to accept such tender to have a decree quieting his title against the defendant, upon payment by him to defendant of the amount of the lien for taxes paid by defendant; or in the event plaintiff does not elect to tender such conveyance he may have a decree quieting his title against defendant upon payment of the aggregate amount of said liens for improvements and taxes; and decree will be drawn accordingly with the provision that each party pay his own costs herein.

CROW, PJ., KLINGER & GUERNSEY, JJ., concur.