27 449
64 515

## WILLIAM O'MULCAHY *vs.* A. M. FLORER.

### February 21, 1881.

**Taxes—Limitation of Actions.**—The limitation in the tax law of 1878 does not apply to tax sales had under the law of 1875.

**Tax Deed not "regular on its face."**—A deed by a county auditor, made in 1865, recited "that whereas the treasurer of the county of Rice, in the state of Minnesota, did, on the 5th day of June, in the year 1862, at the auditor's office in the town of Faribault, in said county, in conformity with all the requisitions of the several acts in such cases made and provided, expose to public sale a certain tract of land, (describing it,) for the sum of six dollars, being the amount of taxes for the year 1861, and whereas, at the time and place aforesaid, said land was not sold for want of bidders, and was therefore declared and became forfeited to the state of Minnesota." It then recited the payment by the grantee in the deed, into the county treasury, of the costs and taxes on the land, and the issuance to him of a certificate thereon. The auditor made the deed as of lands forfeited to the state. *Held,* that the deed does not show the lands to have been forfeited, because it does not show authority in the county treasurer to make a sale for taxes, and the deed is not regular on its face.

**Same—Color of Title.**—One in possession of real estate under an instrument which, upon its face, does not appear to give him any title or right to possession, is not holding under color of title.

Plaintiff brought this action in the district court for Rice county, to recover possession of 160 acres of land in that county, for the rents and profits of the same, and for damages done by defendant to the said property. Defendant, answering, denies plaintiff's ownership, and sets up title under a tax deed from the state on a sale for taxes of 1861, and also under a sale of the premises in 1875 for the tax of 1874,

29

accompanied with peaceable possession since 1873; and, as a counterclaim, defendant sets up improvements made by him on the land in question since 1873, to the value of $1,288.50, and payment of taxes, with interest, to the amount of $1,040.74.

The case was tried before *Buckham*, J., and a jury, who returned a general verdict that plaintiff was entitled to recover possession of the land in controversy, and a special verdict finding that defendant had been in possession of said land before the commencement of this action more than three years after the tax sale in 1875; with a finding also as to the value of the improvements, and the amount of taxes paid and damages done by defendant. The court thereupon ordered judgment for plaintiff that he recover possession of the land in controversy, "provided that execution for possession shall not issue unless, within one year from the rendition of said verdict, the plaintiff shall pay into court for the defendant the sum of $1,109.83," the same being for improvements made and taxes paid by defendant. Judgment was entered accordingly, and both plaintiff and defendant appealed.

*Geo. N. Baxter*, for plaintiff.

*Gordon E. Cole*, for defendant.

GILFILLAN, C. J. As the record does not show any right in plaintiff to recover at all, either the possession of the land or for damages done to it, if defendant's claim that the right of action to avoid the sale in 1875 was barred before the action was commenced be well founded, we will consider that question first.

That sale was had under the statute of 1875. Section 30, chapter 5, General Laws of that year, provides: "No sale shall be set aside or held invalid unless the party objecting to the same shall bring his action to set aside such certificate, or to test the validity of such sale, within five years from the date of the sale." The act of March 11, 1878, (Gen. St. 1878, c. 11,) provides, (section 85:) "No sale shall

be set aside or held invalid, * * * unless the action in which the validity of the sale shall be called in question be brought, or the defence alleging its invalidity interposed, within three years after the date of the sale." The act of 1878 has no express repeal of the act of 1875 or any part of it. But defendant argues that, as the act of 1878 is a general revision of the former laws on the same subject, to wit, the assessment and collection of taxes, it operates, by implication, as a repeal of such former laws, including the section we have quoted from the act of 1875, and that the limitation in the act of 1878 takes the place, even as to past sales, of that in the act of 1875. If the later act operated as a repeal of the limitation in the earlier as to sales under the earlier— and we do not think it did—yet the limitation of the later act would not apply to past sales, but would leave actions to avoid those sales without any limitation except as provided in the general law limiting the time for bringing actions; for the act of 1878 does not purport to regulate nor relate to past transactions. Its whole import is to provide rules for future assessments, future proceedings to enforce taxes, future judgments, future sales, and future certificates of sale, and none other. It does not assume to legislate for the past. Past proceedings of the kind must stand or fall, and be controlled, by the law in force when they were had. The limitation must, in the absence of terms to show a contrary intent, be held to apply only to the sales or certificates thus provided for in the act which fixes the limitation. The plaintiff's action was, therefore, not barred by lapse of three years from the sale in 1875.

The tax deed of 1865, upon which defendant bases his other defence, recited that "whereas, the treasurer of the county of Rice, in the state of Minnesota, did, on the fifth day of June, in the year one thousand eight hundred and sixty-two, at the auditor's office in the town of Faribault, in said county, in conformity with all the requisitions of the several acts in such cases made and provided, expose to pub-

lic sale a certain tract of land, (describing it,) for the sum of six dollars, being the amount of taxes for the year one thousand eight hundred and sixty-one; and whereas, at the time and place aforesaid, said land was not sold for want of bidders, and was therefore declared and became forfeited to the state of Minnesota." It then alleges a purchase by defendant, by payment of the taxes and costs into the county treasury, upon which purchase, and the certificate issued thereon, the auditor makes the deed.

The purchase by defendant could be made only if the lands had been legally forfeited to the state. There is no recital, as there was in *Madland* v. *Benland*, 24 Minn. 372, of the composite or ultimate fact of forfeiture as an independent fact. The recital that "at the time and place aforesaid said land was not sold for want of bidders, and was *therefore* declared and became forfeited to the state," is based on the preceding facts, and derives whatever effect it has from them. It is only stating that *because* not sold when so exposed for sale by the treasurer the land became forfeited to the state. It is clear that the failure by the treasurer to sell for want of bidders could operate to forfeit the lands to the state only in case he had authority to sell. If his offer of them for sale was without authority, it could have no effect whatever as to the authority in the treasurer to sell. It was held in *Sheehy* v. *Hinds, ante,* p. 259, that a recital exactly similar to that in this deed showed no such authority.

As no authority appears for the treasurer to expose the lands for sale on the occasion when they remained unsold for want of bidders, it could not be that the land *therefore* became forfeited to the state. The deed was not regular upon its face. It could not, therefore, serve as a foundation for a claim under what is called the occupying-claimant law, (Gen. St. 1878, c. 75, § 15,) but it was not for that reason inadmissible. The statute attributes certain rights to the purchaser at a void tax sale, and although the deed was, by reason of the defects we have mentioned, irregular and ineffectual to

pass the title, it might be introduced to show defendant in position to claim these rights.    Laws 1860, *c.* 1, § 99, provided that the purchaser at a sale for taxes should be taken as the assignee of the state, "and the amount of taxes, interest, and penalties charged on the said land at the time it was sold, together with all legal taxes afterwards paid thereon by such purchaser, his heirs, or assigns, shall operate as a lien on said lands, and may be enforced as any other lien; * * * and the same shall be required to be paid to the person or persons entitled thereto, before such person or persons shall be evicted or turned out of possession by any claimant recovering, by action, the land sold for taxes."    This provision has been substantially retained in every revision or modification of the tax laws since 1860.    There was no error, then, in admitting the deed in evidence, nor in admitting evidence of taxes paid by defendant.

But it was error to admit the evidence of improvements made by defendant, and also to allow him their value in the judgment.    The value of them could not be allowed, by virtue of the provisions of the occupying-claimant law, under the tax deed, because it was not regular on its face, nor under the certificate of sale of 1875, which was regular on its face, because they were made before defendant had any right of possession under that certificate.    Nor could they be allowed as a set-off against the damages for use of the land under Gen. St. 1878, *c.* 75, § 16, for that section allows them only in favor of one holding under color of title in good faith.    One in possession solely under an instrument which upon its face does not appear to vest in him any title or right to possession —which is the case with this tax deed—cannot be said to hold under color of title.

It appears, also, to be error that the judgment makes no allowance to plaintiff for the damages for waste found by the jury.

Judgment reversed, and new trial ordered.