RUSH B. WHEELER *vs.* ORLANDO C. MERRIMAN.

May 1, 1883.

Occupying Claimants—Compensation for Improvements.—The provisions of Gen. St. 1878, *c.* 75, § 15, commonly known as "the occupying-claimant act," apply only to improvements made on land under color of title in fee. Hence the occupant is not entitled to compensation for improvements made before he acquired such color of title.

Same—Claim of Grantee for Improvements by Grantor.—A grantee does not occupy a better position, in regard to improvements made by his grantor, than the latter himself occupied. Hence, to entitle him to recover for such improvements, he must show that his grantor was within the provisions of the statute when he made the improvements.

Color of Title—Quitclaim Deed conveying Tax Title only.—A quitclaim deed purporting to remise, release, and convey all the grantor's interest in and to the premises, and containing the following: "Intending hereby to convey only my title to said land acquired by the purchase of the same for taxes for the year 1864, and previous years,"—is sufficient to constitute "color of title in fee." The recital in the deed that the title conveyed is only a tax title, will not, of itself, charge the grantee with actual notice of the infirmities in such title, although appearing of record.

Taxation, while Issue of Patent is Suspended.—Land was purchased from the United States and paid for by the location of a land-warrant. It having been discovered that the assignment of the warrant was forged, the warrant was cancelled and the issue of a patent suspended. Subsequently, the grantee of the locator substituted the cash in lieu of the warrant, and a patent was thereupon issued, upon the original entry, to the party locating the warrant. *Held*, that, as against such patentee or his grantee, the land was subject to taxation from the date of the original entry.

Plaintiff brought this action in the district court for Mower county, to recover possession of the E. ½ of the N. W. ¼ of section 22, township 101, range 18, in that county. The answer put in issue plaintiff's title, averred generally title in fee and right of possession in defendant, and that "he took possession of said premises in good faith, without notice of any defects in his said title, and has made improvements thereon, of the value of $500, and has paid taxes amounting to $300." The reply consisted of a general denial of the new matter in the answer and a denial that defendant's improvements were worth more than $30.

At the trial before *Farmer, J.,* and a jury, it appeared that on October 2, 1857, one Jarvis White located a military-bounty land-warrant upon the premises in question, at the land-office at Chatfield in Fillmore county. This warrant was originally issued to one Hider Neville, and upon the back of it was an assignment purporting to be signed by Neville. On August 22, 1857, Neville and one Vandiver, claiming to be owner of the warrant, had filed a *caveat* against it in the general land-office, and thereupon the issue of a patent upon the location was suspended. In November, 1864, the warrant was cancelled by the commissioner of pensions, and declared void as against the United States, on account of forgery in the assignment, and in the same month notice was given to the register at the local land-office, and to White, the locator, who was also informed that, to secure a patent on his location, he would be allowed to file another warrant or pay $100 in cash. In July, 1880, this option was renewed, and on the 11th of that month he paid the $100, and on November 11, 1880, a patent issued to him. In 1880, and again in 1882, White conveyed to plaintiff.

The land had been sold from time to time for the unpaid taxes of each year from 1856 to 1872, inclusive, and tax deeds issued to one J. C. Easton. On March 11, 1879, Easton quitclaimed to one Harris, his heirs and assigns, "all my interest in and to" the land in dispute, "intending hereby to convey only my title to said land acquired by the purchase of the same for taxes for the year 1864 and previous years, 1865, 1866, 1867, 1868, 1869, 1870, 1871, 1872." In May, 1881, Harris quitclaimed to the defendant all his right, title and interest in

and to the land. Harris and defendant each testified, without contradiction, that he purchased in good faith, without knowledge of any defects in the title, but knowing that it rested on Easton's tax deeds. Harris also testified that he entered into possession in 1874, (some five years before his deed from Easton,) and at once broke 65 acres of the land, and made other improvements, of the value, in all, of $365, and in 1880, (after receiving his deed from Easton,) built a granary, at a cost of $150.

The court held all the tax deeds void, and directed the jury to find for the plaintiff on the issue of title, and also instructed them that defendant's entry under the deed from Harris was under color of title in fee, and that if he received the deed without knowing of any defect in the title, and paid a valuable consideration, and entered peaceably and in good faith, he was entitled to recover the value of the improvements made by himself and his grantor. The plaintiff excepted to the instruction as to recovery for improvements made by defendant's grantor. The jury found generally for the plaintiff, and found also that defendant took possession in good faith and under color of title, without notice of any defect in his title, and they assessed the value of the improvements at $500. Judgment was accordingly entered that plaintiff have and recover possession, provided he first, within one year from the rendition of the verdict, pay into court for the defendant the sum of $500, so found by the jury as the value of the improvements. From this judgment the plaintiff appealed.

*Rush B. Wheeler* and *L. A. Pierce*, for appellant.

When the taxes for which the land was sold were assessed, and when the land was sold and the tax deeds given, the title to the land was in the United States, and it was not subject to taxation. Const. art. 2, § 3; *Calder* v. *Keegan*, 30 Wis. 126; *Bronson* v. *Kukuk*, 3 Dillon, 490; *Donovan* v. *Kloke*, 6 Neb. 124; *Gibson* v. *Chouteau*, 13 Wall. 92; *Reynolds* v. *County of Plymouth*, 7 N. W. Rep. 468. The tax sales, therefore, were absolutely void, and even if Easton or Harris had entered under these tax deeds, and they had been regular on their face, they would not constitute color of title, so that the holder could put improvements on the land, and compel the subsequent

purchaser from the United States to pay for them. *Taylor* v. *Miles,* 7 Am. Rep. 558.

But unless Harris's possession from 1874 to 1879 can be held that of Easton, he was not in under color of title at all, but was a mere squatter. He claimed no title "founded upon any instrument which purported to convey it to him." *Seigneuret* v. *Fahey,* 27 Minn. 60. And even if the court could presume, in the absence of evidence, that Harris went in under a contract with Easton, such contract would not given color of title, because not purporting to convey the title. *Rigor* v. *Frye,* 62 Ill. 507.

The quitclaim deed from Easton to Harris gave not color of title so as to entitle Harris to be allowed for the granary. It purports to convey nothing but the tax title. Each of the tax deeds was void upon its face for non-compliance with the statutory requirements. They created no color of title and were not admissible in evidence. *Sheehy* v. *Hinds,* 27 Minn. 259; *Cogel* v. *Raph,* 24 Minn. 194; *Madland* v. *Benland,* Id. 372; *O'Mulcahy* v. *Florer,* 27 Minn. 449; *Shillock* v. *Gilbert,* 23 Minn. 386; *Robson* v. *Osborn,* 13 Texas, 298; *Waterson* v. *Devoe,* 18 Kan. 223; *Walker* v. *Turner,* 9 Wheat. 541; *Call* v. *Dearborn,* 21 Wis. 503; Cooley on Taxation, 353; Blackwell on Tax Titles, 365. Being void on their face, these tax deeds were notice to Harris and to every one of their invalidity. Easton had no title to convey, and Harris was charged with constructive notice of all the defects in the tax deeds, and had actual notice in his quitclaim deed that all Easton assumed or intended to convey was his interest by virtue of his tax titles, which was nothing. Therefore the quitclaim deed gave no color of title. *Seigneuret* v. *Fahey,* 27 Minn. 60; *Kruse* v. *Wilson,* 79 Ill. 233; *McKee* v. *Lamberton,* 2 Watts & S. 107; *Hockenbury* v. *Snyder,* Id. 240; *Miller* v. *Keene,* 5 Watts, 348; *Polk's Lessee* v. *Wendell,* 5 Wheat. 293; *Boone* v. *Chiles,* 10 Pet. 177; *Randall* v. *Edert,* 7 Minn. 359, (450.)

Defendant himself is not in position to claim the benefit of the statute. He took his quitclaim deed in May, 1881. Plaintiff's title had then been of record over 11 months, and defendant knew that he was buying merely the tax title Harris had got from Easton; and like Harris he was chargeable with knowledge that the tax deeds were

void on their face. Buying a mere squatter's title, he stands in no better position than the squatter. *Brown* v. *Wells*, 44 Ga. 573.

*Geo. W. Hall*, for respondent.

MITCHELL, J. Gen. St. 1878, c. 75, § 15, provides: "Where any person, under color of title in fee, and in good faith, has peacefully taken possession of any land for which he has given a valuable consideration, * · * * neither such person, nor his heirs, representatives, or assigns, shall be ejected from such land, except as hereinafter provided, until compensation is tendered him or them for all improvements which he or they may have made upon said land previous to actual notice of the claim upon which the action is founded."

At common law there was no liability on the part of the owner of real estate for improvements made by an occupant, even in good faith, under color of title. The right to recover for them is based upon this statute, and the claimant must bring himself within its provisions. The statute was designed for the benefit of those who have gone into possession in good faith, under color of title in fee, for which they have paid a valuable consideration, and, while thus in possession, believing themselves the owners, have made valuable improvements. Two things are essential to the right to recover for improvements: *First*, the party must have, under color of title in fee and in good faith, peaceably taken possession of land for which he has paid a valuable consideration; *second*, he must, while thus in possession, have made the improvements, previous to actual notice of the claim upon which the action against him is founded. The words of the statute refer *to the time of making the improvements*, and mean that, at the time of making them, he must be in possession under color of title in fee, and be without notice of the claim under which the plaintiff in the action against him seeks to recover. Hence, where the claim for the improvements is made by the grantee of the party who made them, the material inquiry is, not the standing of the grantee when he purchased the land, but of the grantor at the time of making the improvements. A grantee does not occupy a better position in regard to the improvements made by his grantor than the latter himself occupied. Any other construction of the statute would · compel the owner of land to pay for unauthorized improvements

made by a mere trespasser without color of title, provided the latter had conveyed the land to a third person who purchased without notice of the want of title in his grantor. We are satisfied that such a construction is not supported by either the letter or the spirit of the statute. See *Wilson* v. *Red Wing School-District*, 22 Minn. 488; *O'Mulcahy* v. *Florer*, 27 Minn. 449; *Lunquest* v. *Ten Eyck*, 40 Iowa, 213; *Winslow* v. *Newell*, 19 Vt. 164; *Whitney* v. *Richardson*, 31 Vt. 300.

In the case at bar all the improvements were made by defendant's grantor, Harris, before he conveyed to defendant. The court below instructed the jury, in effect, that if defendant entered into possession under color of title in fee, and in good faith, and paid a valuable consideration, he was entitled to compensation for all the improvements made by his grantor, Harris, thus entirely ignoring the questions whether Harris had color of title in fee, or had actual notice of plaintiff's title, when he made the improvements.

It follows from what has been already said that this was error for which the judgment must be reversed.

This disposes of this appeal, but, as another trial may be had, it is proper to consider other questions involved in the case.

2. Harris, defendant's grantor, went into possession of the premises February, 1874, but he had no color of title until March 11, 1879, when he obtained a quitclaim deed from J. C. Easton, which will be hereafter referred to. Therefore, until the date last named, Harris appears to have been a mere squatter or trespasser. He made all the improvements referred to in 1874, except a granary, which he built in 1880. From the construction we have placed upon the statute, it follows that neither Harris nor his grantee could recover for improvements made before the former acquired color of title. The object of the statute being, as already remarked, to protect those who make improvements under color of title, in good faith, believing themselves to be the owners, it is clear that if a person make improvements without any color of title, he cannot recover for them upon the ground that he afterwards acquired such color of title. The provisions of the statute apply only to improvements made *under color of title in fee.*

3. In March, 1879, Harris obtained a quitclaim deed from J. C. Easton, whose only claim of title was under certain tax deeds, which the court below held to be void. The terms of the quitclaim from Easton to Harris were that he remised, released, conveyed, and forever quitclaimed to Harris, his heirs and assigns, all his interest in and to the premises in question, to have and to hold the same to Harris, his heirs and assigns, forever. It contained the following recital, by way of limitation or explanation of the grant: "Intending hereby to convey only my title to said land acquired by the purchase of the same for taxes for the year 1864 and previous years," 1865 to 1872, inclusive. Appellant's contention is that this is insufficient to make Harris an occupant under color of title in fee in good faith, because it does not purport to convey the premises in fee, but only the grantor's interest in them, and because it shows on its face that it only conveyed title acquired by purchase at tax sale, the invalidity of which appeared of record; therefore Harris was chargeable with notice of all the infirmities of his grantor's title and was not a purchaser in good faith. We are led to a different conclusion. A person has color of title when he has an apparent although not real title, founded upon a deed good in form, purporting to convey the same. *Seigneuret* v. *Fahey*, 27 Minn. 60.

It is unquestionably true that a deed cannot operate as color of title so as to have effect beyond the estate which it purports to pass. But a deed of quitclaim and release, like the one under consideration, is sufficient to pass all the estate which the grantor could convey by deed of bargain and sale. Gen. St. 1878, c. 40, § 4. Nor, in our judgment, do the words limiting the title conveyed to title acquired by purchase for taxes, alter the case. If these tax titles had been valid, Easton would have been the owner in fee, and the deed under consideration effectual to pass the title in fee to his grantee. We are, therefore, of opinion that this deed gave Harris color of title in fee. The recital in the deed was actual notice to Harris that the title which Easton was conveying to him was that which he had acquired at tax sale; but this of itself did not amount to *actual* notice that this title was invalid, and it is only *actual* and not *constructive*

notice of this fact which will deprive a party of the benefits of the statute.

4. One other question remains to be considered. It is claimed that, up to the year 1880, these lands belonged to the United States, and hence were not subject to taxation, and therefore neither these tax deeds, even if regular on their face, nor any conveyance from the holder of them, would amount to color of title in fee, so as to impose upon the United States or their grantee the obligation of paying for improvements in order to obtain possession of the land.

If the facts assumed are true, the conclusion must be conceded, for the state cannot interfere with the primary disposal of the soil by the United States, or with any regulations congress may find necessary for securing the title in the soil to *bona fide* purchasers. The facts disclosed by the record are these: One White purchased the land of the United States, on the 2nd of October, 1857, by locating upon it a military-bounty land-warrant. The issue of a patent upon this location was suspended, on account of a *caveat* being filed in the general land-office against the warrant by the owner thereof, on the ground that the assignment was forged; and on that ground the warrant was cancelled, in November, 1864. As is well understood, in such cases, the locator or his assigns have the right to file another warrant, or pay in the cash in lieu of the cancelled warrant, and thereupon a patent will be issued upon the original location. In this case the plaintiff, who was the grantee of White, the locator, in July, 1880, paid to the United States $100 in lieu of the cancelled warrant, and, the substitution being thus made, a patent issued to White upon his original location of October 2, 1857. Had this location been cancelled and the land reverted to the United States, and by them been sold to another purchaser, an entirely different question would have arisen. But in this case the location was never cancelled, but merely the issue of a patent suspended until the substitution was made, the money being substituted for the warrant, and relating back to the original location in 1857, and a patent issued upon that location. The case would not have been different had the entry been made in the first instance with a warrant to which the locator had good title. It is well settled that land purchased of the United States and paid

for, though not patented, is .subject to taxation. It is true that in this case the entry might have been set aside had this substitution of the money for the land-warrant not been made, but this condition attaches to all entries of public lands. The entry was finally approved, and the patent, when issued, related back to the original location. *Witherspoon* v. *Duncan*, 4 Wall. 210.

The jury, by their verdict, found that the plaintiff was the owner of the premises and entitled to the possession. With this the defendant, not having appealed, is content. Hence there is no occasion for a new trial upon the question of title. But, for the reasons given, the judgment must be reversed, and a new trial ordered upon the issues arising out of defendant's claim for compensation for improvements.

Ordered accordingly.