# McINTIRE *v.* PRYOR.

## PRYOR *v.* McINTIRE.

EQUITY ; ACCOUNTING ; RENTS AND PROFITS ; IMPROVEMENTS ;
INTEREST.

1.  Where a deed of land fraudulently procured is ten years after its date set aside by a court of equity upon the petition of the grantor, and an accounting ordered, the defendants are entitled upon such an accounting to compensation for improvements placed by them on the property, when such compensation is claimed merely as an offset to a claim by the complainant for rents and profits during the period of the wrongful occupancy, especially where such rents and profits are for the most part such as have accrued by sole reason of the improvements made by the defendants.

2.  An error which does not prejudice the party complaining of it is not good ground for reversal ; so that if on an accounting before the auditor, he does not apply the true rule as to interest, but the defendants who do not appeal rather than the complainant who does are prejudiced, the error is not reversible error.

Nos. 642 and 643. Submitted February 16, 1897. Decided March 2, 1897.

HEARING on an appeal and a cross-appeal from a decree of the equity court confirming a report of the auditor. *Affirmed.*

The COURT in its opinion stated the case as follows:

These are cross-appeals in the same suit from a decree of the Supreme Court of the District of Columbia, confirming a report of the auditor of that court.

The cause was formerly before us on an appeal from a decree dismissing the bill of complaint. That decree was reversed, and the cause remanded, "with direction to take an account of the indebtedness remaining due by the complainant to Hartwell Jenison, together with an account of the reasonable value of the rents and revenues collected by the defendants since May 4, 1881, or that should have been received by them, as well as of all moneys that have been expended by them, or either of them, in the. payment of taxes and all other proper charges on said premises." And it was provided further in the decree of this court, that " upon the coming in of such report a final decree will be passed annulling each and all of the several trust deeds and conveyances that cloud the title to said premises, and awarding possession thereof to plaintiff upon her paying, within a reasonable time, whatever sums may be found to be actually due, first to said Hartwell Jenison and then to the defendant, Martha McIntire, upon the settlement of the account aforesaid." See 7 App. D. C. 417, 434.

The cause thereupon was referred by the Supreme Court of the District to its auditor for the purpose of the statement of the required account; and that officer, after having taken testimony and having also considered the testimony taken previously in the cause, stated an account, in which he found the sum of $350 due to Hartwell Jenison, without interest, which Jenison declined to claim; and the sum of $1,664.93 as a balance due to the complainant from the defendant, Martha McIntire, or from herself and her co-defendant, on account of the rents and revenues received by them from the property in controversy, after the allowance to them of certain taxes and other legal charges which they

had paid, and also of the sum of $3,300 shown to have been expended by them in the construction of four houses upon the property on or before March 1, 1887.

The statement of Jenison's claim is accepted by all the parties, and no one questions its justice. But to the remainder of the auditor's report both parties to the cause filed exceptions.

Each of the defendants, Edwin A. McIntire and Martha McIntire, filed twelve exceptions, being the same, however, in both cases. Three of these exceptions are of a general character, one of them being directed against any charge whatever of rents, and the other two having reference to the charge of rents against Edwin A. McIntire after the property had been conveyed to Martha McIntire and improved by her. The other exceptions all go to the allowance or refusal of various specified items.

The complainant also excepted to the auditor's report, first, because the defendants had not been charged interest on the rents received by them, and secondly, because Martha McIntire had been allowed the amount expended by her in the construction of buildings upon the premises in controversy.

The court below overruled all the exceptions and rendered a decree in favor of the complainant for the recovery by the latter against the defendants of the sum of $1,664.93, and costs; vacated the deeds of conveyance that had been required to be vacated; adjudged that Hartwell Jenison was entitled to recover from the complainant the sum of $350, with interest from the date of the decree, which sum is decreed to be a lien on the property until it is satisfied; and that the defendants should forthwith deliver possession of the property in controversy.

From this decree affirming and ratifying the auditor's report and in other respects carrying into effect the decision of this court, the parties on both sides have appealed to this court.

*Mr. Enoch Totten* and *Mr. Frank T. Browning* for the appellant McIntire.

*Mr. Franklin H. Mackey, Mr. H. O. Claughton* and *Mr. W. W. Boarman* for the appellant Pryor:

1. The defendant, according to the practice as laid down by the Supreme Court in *New Orleans* v. *Gaines,* 14 Wall. 624, should have been charged interest with reasonable rates on the rents collected. See also the very full opinion of the court below in *Gaines* v. *New Orleans,* 4 Woods, 213, where the method of stating the account is clearly shown.

2. A *mala fide* possessor of real property cannot be allowed for improvements made upon the property while in his possession, but a *bona fide* purchaser may be allowed to the extent of the rents collected by him, and no more, for such improvements. *Green* v. *Biddle,* 8 Wheaton, 1.

When circumstances of fraud exist on the part of a purchaser of real estate or his assignee, with notice thereof, he will not be entitled to compensation for improvements made on such fraudulently acquired property. *Beckett* v. *Tyler,* 3 MacArthur, 319; see also Story's Eq. Jur., Secs. 388, 799; see the excellent note to this section, and Secs. 1234 to 1239; Pomeroy, Eq. Jur., Sec. 1241, and note.

"The equitable rule, as to the effect of a person's lying by and allowing another to expend money on his property, does not apply where the money is expended with knowledge of the real state of the title." *Rennie* v. *Young,* 2 De Gex & Jones, 136.

"If a stranger builds on land knowing it to be the property of another, equity will not prevent the real owner from afterwards claiming the land, with the benefit of all expenditures upon it." *Ramsden* v. *Dyson,* 1 English & Irish Appeals, 129; *Cook* v. *Craft,* 3 Lansing (N. Y.), 512; *Davidson* v. *Barclay,* 63 Pa. 406; *Dant* v. *Hercules,* 57 Ill. 446; *Cannon* v. *Copeland,* 43 Ala. 252.

Mr. Justice MORRIS delivered the opinion of the Court:

The defendants, the McIntires, have assigned for error: 1st. That the court below erred in vacating and annulling the various deeds affecting the real estate involved in this case and mentioned and described in the pleadings, proceedings, and decree herein; 2d. That the court below erred in charging the defendants with the full amount of rents collected by them from the property as improved after it went out of the possession of Mary C. Pryor and into the possession of the defendant, Martha McIntire. There is no assignment of error based upon the allowance or disallowance of the various items mentioned in the exceptions filed by the defendants; and it is presumed that those exceptions have been abandoned. They could not be sustained in any event, as there is nothing whatever in the record to show that the auditor was not right in his action in regard to them. His finding thereon must be accepted as conclusive.

The complainant has two assignments of error, following closely the two exceptions filed by her to the auditor's report.

1. The assignments of error on behalf of the defendants in the cause are scarcely intended to be considered by us here. They go to the correctness of our original decision in the case, which we find no reason to question; and the purpose of the assignments is merely to save the rights of the defendants as far as possible in any further review that may be had of the case. It is not questioned, indeed it is expressly admitted in the brief submitted on behalf of the defendants, that, if an accounting was proper in the case, the accounting itself is correct. The position of the defendants is, that no accounting should have been required of them.

As an inducement, however, to a rehearing or review of our decision on the former appeal, the case of *Willard* v. *Wood*, decided by the Supreme Court of the United States at

its present term, and which was taken thereto by appeal from this court, is pressed upon our attention. But the decision of the Supreme Court in that case is in affirmance of the previous decision therein of this court; and we find nothing therein inconsistent with our decision in the present case.

2. Upon this appeal we are called upon only to consider the complainant's two assignments of error; and of these it is expedient to consider the second assignment first, inasmuch as the decision therein will have an important bearing on the first assignment.

The contention here on behalf of the complainant is, that the defendants were occupants in bad faith of the property in controversy, and that only occupants in good faith can be allowed compensation for improvements made by them, and they only to the extent of the rents collected by them, and no more. And the case of *Green* v. *Biddle*, 8 Wheaton, 1, and other authorities, are cited in support of the proposition. But it seems to us that in its application to the present case and under the peculiar circumstances of the case the proposition cannot be sustained.

Statutes have been enacted in several States of our Union, perhaps in the larger number of them, incorporating into their political and judicial system the provision of the Roman civil law that no one should be enriched to the injury of another, and that therefore to an occupant of land under a title which proves to be defective, and who has in good faith placed valuable improvements thereon enhancing the value of the property, compensation should be allowed even as against the true owner, when he had been evicted by the latter. And this compensation it has been sought to allow by giving such occupant a lien or charge upon the premises recovered, or by permitting him in certain contingencies to purchase the property; and the constitutionality of such statutes has been generally sustained. *Fee* v. *Cowdry*, 45 Ark. 413; *Ross* v. *Irving*, 14 Ill. 171;

*Griswold* v. *Bragg*, 48 Conn. 577; *Whitney* v. *Richardson*, 31 Vt. 306; *Plaquette* v. *Pickness*, 19 Wis. 219; *Huebschman* v. *McHenry*, 29 Wis. 655; *Childs* v. *Shower*, 18 Iowa, 261; 10 Am. & Eng. Encyc. L., Title *Improvements*; *Leighton* v. *Young*, 18 L. R. A. 266, 271.

One such statute, however, an act of the Legislature of the State of Kentucky, was brought into question in the case of *Green* v. *Biddle, supra*, in the Supreme Court of the United States as early as the year 1823, and was held to be unconstitutional and void, as being in violation of the compact between the State of Virginia and the State of Kentucky, contained in the act of the Legislature of Virginia of the 18th of December, 1789, and incorporated into the constitution of Kentucky. But it is not apparent that, in the absence of such a compact, the act would have been held unconstitutional; and later decisions, as we have seen, affirm the validity of such legislation.

But the case of *Green* v. *Biddle* is important for its statement of the doctrine of the common law and of equity, as well as that of the civil law, on the subject of compensation for improvements made by an occupant upon property from which he is afterwards evicted.

At common law, it is said, "a right to land includes the right to enter on it, when the possession is withheld from the right owner, to recover the possession by suit, to retain the possession, to receive the rents and profits arising from it." And the court adds: "We are not aware of any common law case which recognizes the distinction between a *bona fide* possessor and one who holds *mala fide* in relation to the subject of rents and profits."

But the doctrine of equity is somewhat different. "Equity allows an account of rents and profits in all cases from the time that the title accrued, provided that do not exceed six years, unless under special circumstances; as where the defendant had no notice of the plaintiff's title, nor had the deeds and writings in his custody in which the plaintiff's

title appeared, or where there has been laches in the plaintiff in not asserting his title, or where the plaintiff's title appeared by deeds in a stranger's custody; in all which cases, and others similar to them in principle, the account is confined to the time of filing the bill." This is the English chancery rule, as stated in 1 Madd. Ch. 72, and in *Dormer* v. *Fortescue*, 3 Atk. 128, by Lord Hardwicke

The exception to the rule is, as well established as the rule itself. In the early case of *Southall* v. *McKean*, 1 Wash. 336, it was said: "If the equitable owner of land, who is conusant of his right to it, will stand by and see another occupy and improve the property, without asserting his right to it, he shall not in equity enrich himself by the loss of another, which it was in his power to have prevented, but must be satisfied to recover the value of the land independent of the improvements."

By Mr. Justice Story, in his Equity Jurisprudence, the doctrine of equity on this point is stated as follows:

"If a plaintiff in equity seeks the aid of the court to enforce his title against an innocent person who has made improvements upon land supposing himself to be the absolute owner, that aid will be given to him only upon the terms that he make due compensation to such innocent person to the extent of the benefits which will be received from those improvements" (Sec. 799*a*). And again: "Where a party lawfully in possession under a defective title has made permanent improvements, if relief is asked in equity by the true owner, he will be compelled to allow for such improvements" (Sec. 1237). And in the note to the latter section, it is said citing the case of *Bright* v. *Boyd*, 1 Story, 478: "In cases where the true owner of an estate after a recovery thereof at law from a *bona fide* possessor for a valuable consideration without notice, seeks an account in equity as plaintiff against such possessor for the rents and profits, it is the constant habit of courts of equity to allow such possessor as defendant, to deduct therefrom the full

amount of all the meliorations and improvements which he
has beneficially made upon the estate, and thus to recoup
them from the rents and profits. 2 Story on Eq. Jurispr.,
Secs. 799*a*, 799*b*, 1237, 1238, 1239; *Green* v. *Biddle*, 8
Wheat. 77–81. So if the true owner of an estate holds only
an equitable title thereto and seeks the aid of a court of
equity to enforce that title, the court will administer the aid
only upon the terms of making compensation to such *bona
fide* possessor for the amount of his meliorations and im-
provements of the estate beneficial to the true owner. See
also 2 Story Eq. Jur., Sec. 799*b* and note; Id., Secs. 1237,
1238. In each of these cases the court acts upon an old
established maxim in its jurisprudence that he who seeks
equity must do equity."

In the case of *Williams* v. *Gibbs*, 20 How. 535, this doc-
trine was fully indorsed and applied, with terms of commen-
dation for the more liberal doctrine of the civil law. So
also in the case of *Putnam* v. *Ritchie*, 6 Paige, 390. And
in the more recent case of *Canal Bank* v. *Hudson*, 111 U. S.
66, 83, the Supreme Court of the United States, by Mr.
Justice Blatchford, to some extent modifying the rule laid
down in *Green* v. *Biddle*, announced the rule of equity
broadly to be this: "Where a party lawfully in possession
under a defective title makes permanent improvements, if
relief is asked in equity by the true owner, he will be com-
pelled to allow for such improvements." And the opinion
cites in behalf of the rule, 2 Story's Eq. Jur., Sec. 1236,
note 1; *Bright* v. *Boyd*, 1 Story, 478, and 2 Id. 605; *Putnam*
v. *Ritchie*, 6 Paige, 390; *Williams* v. *Gibbs*, 20 How. 535.

There can be no question, therefore, now as to the true
rule of equity for the allowance of compensation for im-
provements placed upon land in good faith by an occupant
who is afterwards evicted, when such compensation is sought
merely as an offset to a claim of the true owner for the rents
and profits during the period of the wrongful occupancy;
and we do not understand that the rule is controverted by

the complainant in the present case. The claim is that the defendants, having procured the conveyance of the land to them by fraud, were not occupants in good faith within the purview of the rule, and are not therefore entitled to compensation.

It must be confessed that the authorities leave unsettled the question what constitutes good faith in such cases; and it is probably difficult, if not impossible, to lay down any general definition of it, just as it has been found impossible, and inexpedient even if possible, to define what constitutes fraud. It would seem that each case must be governed by its own circumstances. A mere trespasser, of course, is not entitled to compensation for improvements put by him upon land; there must be some color of title or pretense of ownership. *Green* v. *Biddle*, 8 Wheat. 1; *O'Mulcahy* v. *Florer*, 27 Minn. 449; *Matthews* v. *Davis*, 6 Humph. 324. The rule, as stated by Mr. Justice Blatchford for the Supreme Court in *Canal Bank* v. *Hudson, supra,* would seem to be more definite than that which would remit us to an inquiry of good faith and is applicable to the present case. There it is said that compensation should be allowed to a party " *lawfully in possession under a defective title.*"

Now, in the strict sense, there cannot be any lawful possession by any one, under any circumstances, as against a true owner. There cannot be two antagonistic rights to the same specific property. Right, like truth, is necessarily one and indivisible. Any possession antagonistic to that of the true owner must be founded on wrong. In the contemplation, therefore, of this rule and of the principles of equity applicable to such cases, it is not every wrong that constitutes bad faith that would exclude one from the protection of a court of equity. On the contrary, title founded upon wrong may ripen into absolute legal right, and may even become an absolutely equitable right. It must be, then, that the lawful possession here mentioned must be possession according to the forms of law, but liable to be disturbed

and displaced by the assertion of antagonistic equitable rights.

The defendants in this cause had in themselves not merely a defective title, but a perfect legal title. They were the absolute owners of the property, both legally and equitably, as against all the world, except the complainant. They were such owners by the very act of the complainant. She had parted with her legal title to them, and had put them in possession; and there is no doubt that they believed that they had acquired good title to the property. It is true that all this had been accomplished by gross fraud upon the complainant, which she was entitled to have redressed in a court of equity. But the transaction was voidable, not void; and it was for the complainant alone to avoid it. She seems to have been in no great haste to avoid it; and although we have held that she was not guilty of laches in such manner or to such an extent as to preclude her from redress in equity, yet we must also hold that her delay in the assertion of her equitable right was such as to give sanction to the improvement of the property by the defendants. The improvements were not made until about seven years after the complainant had parted with the title to the property and the defendants had become seized of it; and it was three years after that before the present suit was instituted. It is claimed that she made some protest against the construction of the improvements in question; but the proof on that point is rather vague. She is, it is true, a poor, ignorant colored woman, unacquainted with her rights under the law, and equally unacquainted with the law's requirements, and the consideration of that fact was potent in our determination of the fraud that was practiced upon her. But we are not justified by any such consideration in sanctioning the punishment of the defendants by the confiscation of that which they placed upon the land when they were the apparent owners under an apparently good record title, and which it is not controverted beneficently enhances the value of the property to the full extent of the value of such improve

ments: It does not seem to us to be a case proper for such punishment of the defendants.

There is another consideration which should not be ignored. The rents and profits with which the defendants are charged are for the most part such as have accrued by sole reason of the improvements made by them. It would be most inequitable to charge them, not merely with the rents and profits of that which they had wrongfully and fraudulently taken from the complainant, but likewise of that which they themselves had created upon the property. *Adkins* v. *Hudson*, 19 Ind. 392. If it were proper to reject the claim of the defendants for compensation for their improvements, it would be only the dictate of reason and justice that they should not be held liable to the complainant for the profits derived by them from those improvements alone. This would leave them chargeable only with a fair rental value for the land and premises independently of the improvements; and it is not apparent that this would lead to any substantially different result from that of the method of accounting which has been adopted.

We do not think that it was error for the auditor or for the court below to have allowed to the defendants the value of the improvements which they put upon the property in controversy.

3. There remains the complainant's first assignment of error based upon the auditor's failure to allow her interest on the rents as received by the defendants.

Undoubtedly the account is not stated in precise accordance with the rule laid down by the Supreme Court of the United States in the case of *Story* v. *Livingston*, 13 Pet. 359. and in the case of *New Orleans* v. *Gaines*, 15 Wall. 624, 632, Says the Supreme Court in the former case: "The correct rule as to interest is that the creditor shall calculate interest whenever a payment is made, and to this interest the payment is to be applied; and if it exceeds the interest due, the balance is to be applied to diminish the principal; and this rule applies whether the debt be one which expressly draws

interest, or one in which the interest is given as damages." And, of course, the rule applies as well to mutual accounts set off against each other as to those where the payments are all on one side.

Tested by this rule, the auditor's statement is not correct; for he declined to allow interest to either party when both were entitled to it. But it may well be questioned whether the parties to the proceeding adduced before that officer the proper data on which to calculate interest. The testimony before him, if we may judge from his report, was extremely vague and meagre; perhaps it was the best that could be had; but evidently he was compelled to grope his way in darkness. But when we hold, as we have held, that it was proper for the auditor to allow to the defendants the sum of $3,300 as the value of their improvements, and when it is considered that under the rule just cited this sum is entitled to bear interest as against the claim of the complainant, it is not apparent that any injury has been done to the latter by the mode of computation here adopted by the auditor. The result of an exact application of the rule would be to diminish the balance due to the complainant; and the error, if error there be under the circumstances, is one that prejudices only the defendants. But the defendants do not complain of this. On the contrary, with a reservation of denial of any liability whatever on their part for an accounting; they admit in their brief that the accounting is correct, if they are liable at all. It is settled that an error which does not prejudice the party complaining of it is not good ground for reversal. *Lancaster* v. *Collins*, 115 U. S. 222.

The complainant's first assignment of error, as well as the second, we must regard as untenable.

From what we have said, it follows that the decree of the Supreme Court of the District of Columbia here appealed from must be *affirmed. And as both parties have appealed, it is proper that each one should pay his or her own costs on appeal. And it is so ordered.*