NORTHERN INVESTMENT COMPANY v. LARS P. BARGQUIST and Others.[1]

July 22, 1904.

Nos. 13,974—(202).

**Improvements.**

Section 5853, G. S. 1894, defining the word "improvements," as used in the occupying claimants act, construed, and *held* that ordinary repairs are not within its purview, but that all improvements which are of permanent value to the land are within its scope.

**Findings—Evidence.**

The findings of the trial court herein, to the effect that the plaintiff, under color of title in fee, in good faith, peacefully entered into the possession of the land here in question, for which it gave a valuable consideration, and made improvements thereon which were of permanent value to the land, are sustained by the evidence.

[1] Reported in 100 N. W. 636.

Action in the district court for Ramsey county to determine the adverse claims of defendants to land in possession of plaintiff. Service of the summons was had by publication thereof and judgment by default was entered in favor of plaintiff. Thereafter the judgment was opened upon motion of defendant Louisa Grahlfs, who interposed an answer asserting herself to be the owner of the premises. Plaintiff in its reply set up the value of improvements made by it. The case was tried before Kelly, J., who made findings of fact and as conclusion of law found that defendant Grahlfs was entitled to judgment of ownership and possession provided she should pay into court within one year for the use of plaintiff $650, the value of the improvements made, and $14.75, the amount of taxes paid by plaintiff. From a judgment entered pursuant to the findings, defendant Grahlfs appealed. Affirmed.

*John F. Fitzpatrick,* for appellant.
*Ambrose Tighe,* for respondent.

START, C. J.

Action to quiet title to a lot in the city of St. Paul, and this is an appeal by the defendant Louisa Grahlfs from the judgment of the district court of the county of Ramsey to the effect that she is the owner in fee of the lot, and that the plaintiff has no interest therein or lien thereon, provided she pays to the plaintiff, or to the clerk of the court for it, within one year, the sum of $664.75, but, if such payment is not made, the plaintiff, on application to the court, have judgment as prayed in its complaint.

The facts as found by the trial court are substantially these: The defendant Louis P. Bargquist was on August 7, 1895, the owner of the lot, and on that day conveyed it by quitclaim deed to the defendant Louisa Grahlfs, hereafter called the defendant, who recorded her deed on September 19, 1903. Emerson W. Peet duly purchased for $25.16 the lot on May 8, 1895, at a general tax sale held pursuant to a tax judgment for the taxes of 1893, and the usual certificate of sale was delivered to him. He paid the taxes on the lot for the years 1894 and 1895 after they became delinquent; amounting, in the aggregate, to $51.67. The fact of the payment of such delinquent taxes was noted in the copy of the 1893 tax judgment book. He duly purchased

for $17.13 the lot on May 5, 1898, at a general tax sale held pursuant to a tax-sale judgment for the taxes of 1896, and the usual certificate of sale was delivered to him. He paid the taxes on the lot for the years 1897 and 1898 after they became delinquent, amounting in the aggregate to $29.46. The fact of the payment of such delinquent taxes was noted in the copy of the 1896 judgment book.

On October 17, 1900, the lot was assessed in the name of J. E. Ransom, and on that day, at the request of Peet, the county auditor issued a notice of expiration of redemption from the tax sale on the judgment for the taxes of 1893, which was addressed to J. E. Ransom. The notice included the amount of the tax certificate and of the delinquent taxes for 1894 and 1895, but not the delinquent taxes of 1897 and 1898. The return of the sheriff on this notice showed that J. E. Ransom could not be found, and further that the notice was personally served on Mrs. Lillie Hise, as the person in possession of the lot. On the trial, however, it appeared that Conrad Heis, with his wife, Lillian Heis, was the person in the actual possession of the lot. No redemption was made from the tax sale as required by the notice. Peet died testate April 17, 1902, and his will was duly probated, his executors being his sole heirs, who, as individuals and executors, on June 5, 1902, for a valuable consideration to them paid, conveyed the lot by quitclaim deed to the plaintiff, which, on June 26, 1902, entered into peaceable possession of the lot under color of title and in good faith, and ever since has been, and now is, in such possession.

On July 3, 1902, the plaintiff began this action, and the summons was served on the defendant by publication. Such further proceedings were had in the action that on October 14, 1902, judgment was entered adjudging the plaintiff to be the owner of the lot, and that none of the defendants had any right, title, or interest therein or lien thereon. Thereafter, and during the month of November, 1902, the plaintiff commenced to make improvements on the lot, which were completed in January, 1903, of the value of $650.15, and which enhanced the value of the lot in such sum. The improvements so made by the plaintiff were of the kind provided for by section 5853, G. S. 1894, and without such improvements the land had no rental value. The plaintiff on May 22, 1903, paid the taxes on the lot, in the sum of $14.75. The judgment on the application of the defendant was on July 17,

1903, set aside, as to her, and she was permitted to answer. She denied by her answer the allegations of the complaint, and alleged by way of counterclaim that she was the sole owner of the lot, in fee, and that neither the plaintiff, nor any of the other defendants, had any right, title, or interest in or to the lot, or lien thereon, and prayed judgment accordingly. The plaintiff replied, setting up its claim for improvements.

The plaintiff's possession of the lot was taken peacefully, under color of title and in good faith, and for the lot it gave a valuable consideration. The plaintiff also, as the successor in interest of Peet, took possession of the lot under the official deed of the county auditor, empowered by law to sell the same, and had no actual notice of any defects invalidating such deed, which is regular upon its face.

As a conclusion of law from the facts found, the trial court directed the entry of the judgment appealed from. It is clear that the conclusion of law was correct, if the findings of facts are sustained by the evidence. It may be fairly inferred from the whole record that the lot had been abandoned by the owners of the patent title, as they paid no taxes on it for ten years. It was only when the plaintiff had, by its improvements, made the lot valuable, that the defendant showed any interest therein, and her effort to appropriate the improvements without making compensation therefor is wholly inequitable. Manifestly, then, the findings of the trial court ought to be sustained if it can be done by any reasonable view of the evidence. The defendant, however, by proper assignments of error, raises the question of the sufficiency of the evidence to sustain the findings of fact. She claims that the finding to the effect that the plaintiff, as the successor in interest of Peet, took possession of the lot under the official deed of the county auditor, without notice of any defects, is not sustained by the evidence; nor the finding that the plaintiff paid a valuable consideration for the deed from the heirs of Peet, and took possession of the lot under color of title and in good faith, giving a valuable consideration for it; nor the finding as to the character of the improvements.

It is not entirely clear that the finding that the plaintiff entered under the official deed of the county auditor, regular on its face, is sustained by the evidence. We, however, find it unnecessary to decide this question, and refrain from discussing it.

The evidence is substantially uncontradicted that after the plaintiff's original judgment, adjudging that it was the sole owner in fee of the lot, it went into possession thereof under the deed from the executors and heirs of Peet, and made the improvements in question. But the defendant urges that the evidence is wholly insufficient to sustain the finding that the plaintiff gave a valuable consideration for the lot. The evidence was the deed, which was regular on its face, and recited the payment of a valuable consideration, and, being in writing, it imported one. The defendant called one of the grantors, W. F. Peet, who testified as follows:

> Q. What did they [the plaintiff] pay you for the property if anything? A. They haven't paid me anything yet.

The president of the plaintiff was also called by the defendant, and testified:

> Q. The Northern Investment Company didn't pay Mr. Peet anything for that deed, actually, did they? A. Well, Mr. Peet said yeterday that they hadn't, and I haven't any recollection of there having been any transfer of money actually made.

It is to be noted that this testimony is to the effect that the plaintiff has not as yet paid one of the grantors anything for the deed. This does not necessarily rebut the consideration imported by the deed by virtue of the statute which provides that

> All contracts in writing expressing a consideration signed by the party to be bound * * * shall import a consideration. Laws 1899, p. 88, c. 86, § 2.

We hold that the finding that the plaintiff gave a valuable consideration for the lot is not so manifestly against the weight of the evidence as to justify us in setting it aside. The evidence is ample to sustain the finding that the plaintiff, under color of title in fee, and in good faith, peacefully took possession of the lot, and made thereon the improvements in question. The quitclaim deed in this case constituted color of title, for it appeared upon its face to convey the title. G. S. 1894, § 4180; Wheeler v. Merriman, 30 Minn. 372, 15 N. W. 665; Hall v. Torrens, 32 Minn. 527, 21 N. W. 717.

The plaintiff's good faith appears from the circumstances of its entry into the possession of the lot, and the character of the improvements it made, as disclosed by the evidence. The fact of such good faith was testified to directly by the president of the plaintiff. This was competent. It is, however, claimed by the defendant that the plaintiff had actual notice of her title before making the improvements, and that this is shown by the admissions in its reply, as follows:

> The said Emerson W. Peet and the plaintiff had made repeated and unsuccessful efforts to locate the owner and any other party interested in said property. They had urged the defendant Louisa Grahlfs, who appeared of record to have a mortgage on said premises, to redeem from said taxes; but said defendant, through her agent in St. Paul, whom the said Emerson W. Peet and this plaintiff had dealings with on said matter, took the position that said property was not worth the amount of taxes due thereon, and not worth redeeming.

But the title under which the defendant prevailed was the deed to her, which was not recorded until after the improvements were made. Any interest she may have had by virtue of the mortgage mentioned in the reply was apparently cut out by the judgment. Again, if it be a fact that the records disclosed that the plaintiff in fact acquired no title by its deed, yet this does not affect the question of its good faith, unless it had notice, in fact, of the condition of the title. Seigneuret v. Fahey, 27 Minn. 63, 6 N. W. 403; Everett v. Boyington, 29 Minn. 264, 13 N. W. 45; Wheeler v. Merriman, 30 Minn. 372, 15 N. W. 665.

The only other question which we deem it necessary to consider is the character of the improvements. The statute (section 5853) defines the character of the improvements for which compensation may be had as follows:

> The word "improvements," as used in this act, shall be construed to include all kinds of buildings, fences, ditching, draining, grubbing, clearing, breaking and all other necessary or useful labor of permanent value to the land.

It is clear from a reading of this section—and we so hold—that ordinary repairs are not within its purview, but that all improvements

which are of permanent value to the land are within its scope. The test is whether the alleged improvements are of permanent value to the land. The trial court found that the improvements made by the plaintiff were of the kind provided for by this section of the statute, and that they enhanced the value of the lot in the sum of $650.15, which was also the reasonable value of them. This finding is supported by the evidence.

Judgment affirmed.